```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
BRIAN BOWLER,

                    Plaintiff,
                                            MEMORANDUM & ORDER
        -against-                           18-CV-5068 (JS)

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.
----------------------------------X
APPEARANCES
For Plaintiff:     Stacey Rinaldi Guzman, Esq.
                   Stanton, Guzman & Miller LLP
                   820 Hempstead Turnpike, 2nd Floor
                   Franklin Square, New York 11010

For Defendant:     Candace Scott Appleton, Esq.
                   United States Attorney's Office
                   Eastern District of New York
                   271 Cadman Plaza East
                   Brooklyn, New York 11201
```

SEYBERT, District Judge:

Plaintiff Brian Bowler ("Plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), challenging the Commissioner of Social Security's (the "Commissioner") denial of his application for Social Security Disability Insurance Benefits. (Compl., D.E. 1, ¶¶ 1, 8.) Presently pending before the Court are the parties' cross-motions for judgment on the pleadings. (Pl. Mot., D.E. 9; Comm'r Mot., D.E. 13.) For the following reasons, Plaintiff's motion is GRANTED and the Commissioner's motion is DENIED.

## BACKGROUND[1]

On July 13, 2015, Plaintiff completed an application for disability insurance benefits alleging that since December 31, 2014, chronic obstructive pulmonary disease ("COPD"), emphysema, chronic pneumonia, lumber spine pain, osteoarthritis, venus insufficiency, hepatitis C, and cellulitis rendered him disabled. (R. 187-88, 245.) After Plaintiff's claim was denied (R. 108-19), he requested a hearing before an Administrative Law Judge ("ALJ") (R. 120-21). On February 20, 2018, Plaintiff, accompanied by counsel, appeared for a video hearing before the ALJ. (R. 34-56.) A vocational expert also testified at the hearing. (R. 47-55.)

In a decision dated March 8, 2018, the ALJ found that Plaintiff was not disabled. (R. 12-33.) On July 6, 2018, the Social Security Administration's Appeals Council denied Plaintiff's request for review and the ALJ's decision became the final decision of the Commissioner. (R. 1-4.)

Plaintiff initiated this action on September 7, 2018 (see Compl.) and moved for judgment on the pleadings on

---

[1] The background is derived from the Administrative Record filed by the Commissioner on February 9, 2018. ("R.", D.E. 8.) For purposes of this Memorandum and Order, familiarity with the Administrative Record is presumed. The Court's discussion of the evidence is limited to the challenges and responses raised in the parties' briefs.

April 4, 2019 (Pl. Mot.). On July 3, 2019, the Commissioner filed a cross-motion for judgment on the pleadings. (Comm'r Mot.)

DISCUSSION

I. Standard of Review

In reviewing the ruling of an ALJ, the Court does not determine de novo whether Plaintiff is entitled to disability benefits. Thus, even if the Court may have reached a different decision, it must not substitute its own judgment for that of the ALJ. See Jones v. Sullivan, 949 F.2d 57, 59 (2d Cir. 1991). If the Court finds that substantial evidence exists to support the Commissioner's decision, the decision will be upheld, even if evidence to the contrary exists. See Johnson v. Barnhart, 269 F. Supp. 2d 82, 84 (E.D.N.Y. 2003).

II. The ALJ's Decision

Here, the ALJ found that Plaintiff met the insured-status requirements of his claim through December 31, 2017. (R. 18.) Next, the ALJ applied the familiar five-step disability analysis and concluded that Plaintiff was not disabled from December 31, 2014, the alleged disability-onset date, through December 31, 2017, the last date insured. (R. 18-29); see 20 C.F.R. § 404.1520. At steps one through three, the ALJ found that (1) Plaintiff had not engaged in substantial gainful activity since the alleged onset date, (R. 18); (2) Plaintiff had severe impairments consisting of lumbago, degenerative disc disease, and

3

COPD (R. 18-19); and (3) Plaintiff's impairments did not meet or medically equal the severity of any of the impairments listed in Appendix 1 of the Social Security regulations (R. 19-20).

The ALJ then determined that Plaintiff had the residual functional capacity ("RFC") "to perform light work (per the jobs identified by the vocational expert) as defined in 20 CFR 404.1567(b)." (R. 20-27.) The vocational expert testified that Plaintiff could find gainful employment as (1) an inspector hand packager, (2) an electrical accessories assembler, (3) a cashier, (4) a photo copy machine operator, and (5) a hand trimmer. (R. 28.) The ALJ found that Plaintiff "could lift/carry fifty pounds occasionally and twenty pounds frequently; sit eight hours, up to four hours at a time; stand eight hours, up to two hours at a time; and walk eight hours, up to two hours at a time" and that Plaintiff could "change positions at the workstation, with no interruption of the work." (R. 20.) The ALJ further found Plaintiff (1) "should never climb ladders or scaffolds and should not work at unprotected heights," (2) "could frequently tolerate humidity and wetness," (3) "should avoid concentrated exposure to pulmonary irritants (i.e., dust, odors, fumes, gases and poor ventilation)," and (5) "could tolerate loud (heavy traffic) noise." (R. 20.)

Proceeding to steps four and five, the ALJ found that while (4) Plaintiff was unable to perform his past relevant work

4

as a recycling worker (R. 27), (5) considering his RFC, age, education, and work experience, Plaintiff could make a successful adjustment to work existing in significant numbers in the national economy as an inspector hand packager, electrical accessories assembler, cashier, photo copy machine operator, and hand trimmer (R. 27-28). As a result, the ALJ determined that Plaintiff was not disabled.[2] (R. 29.)

### A. The ALJ's RFC Determination

The ALJ addressed Plaintiff's alleged claims of disability due to "COPD, lumbar spine (pain), emphysema, osteoarthritis, venous insufficiency, hepatitis C, cellulitis, and chronic pneumonia" and referenced his testimony that he is unable to work "due to breathing problems and pain in his back." (R. 20, 24.) However, the ALJ found that Plaintiff "does not

---

[2] On March 7, 2013, Plaintiff filed a separate claim for disability insurance benefits (the "Prior Disability Claim") that was denied on March 13, 2014. (R. 76, 76-86.) Among other things, the ALJ found that Plaintiff had severe impairments consisting of COPD, disc bulges, a back sprain/strain, neuroma and mild osteoarthritis of the feet, venous insufficiency of the lower extremities, hepatitis C (R. 78-79) and that Plaintiff had the RFC to perform "the full range of sedentary work" but not "more physical-demanding work. He is able to sit a total of six hours in an eight-hour workday and is unable to lift/carry more than five pounds frequently or ten pounds occasionally." (R. 80-84.) On August 14, 2015, Plaintiff filed an appeal to the Eastern District of New York. (See No. 15-CV-4775, Bianco, J.) On May 20, 2016, the Prior Disability Claim appeal was administratively closed and "will be immediately re-opened and restored to the Court's active docket upon the full submission of the motions for judgment on the pleadings." (No. 15-CV-4775, D.E. 9.) The Prior Disability Claim appeal remains closed.

5

appear to have a disabling physical condition" even though Plaintiff's impairments could "reasonably be expected to cause the alleged symptoms" but that "these symptoms are not entirely consistent with the medical evidence and other evidence in the record."  (R. 24.)

In deciding Plaintiff's RFC, the ALJ considered Plaintiff's testimony (R. 20-21), the ALJ's determination from the Prior Disability Claim (R. 21), and the "objective record evidence" (R. 21).  The ALJ detailed her review of the "objective record evidence" (R. 21-23) and cited to records from Dr. Aftab Chaudhri, Plaintiff's primary care physician (R. 21), Dr. Jerome Caiati, who performed a consultative examination (R. 22), Dr. Anil Mongia, who performed consultative examination and conducted pulmonary testing (R. 22), Dr. Steve Mermelstein, Plaintiff's treating pulmonologist (R. 22-23), Dr. Gregory Ajemian, Plaintiff's treating internist (R. 23), and Plaintiff's ear nose and throat medical records (R. 23).

The ALJ then addressed Plaintiff's back impairment and found that "consultative examination did not reveal any disabling findings."  (R. 24.)  The ALJ next turned to Plaintiff's pulmonary impairments and found that the "record does not reveal a work-precluding pulmonary impairment."  (R. 24.)

The ALJ next considered statements and opinion evidence (R. 25-26) and ultimately adopted and afforded significant weight

6

to the opinion of Dr. Edwin Cruz, a non-examining medical expert who is board certified in internal medicine, pulmonary medicine, and critical care (R. 26). Based solely on a review of medical records, Dr. Cruz provided answers to medical interrogatories and filled out a medical source statement of Plaintiff's ability to do work-related activities. (R. 680-92.) Among other things, Dr. Cruz opined that Plaintiff (1) could occasionally lift/carry up to 50 pounds (R. 681); (2) stand and walk for two hours at a time, and sit, stand, and walk for eight hours in an eight-hour work day (R. 682); and (3) climb stairs continuously (R. 684). Dr. Cruz also stated that "PFTs [pulmonary function tests] suggest sufficient reserve to perform mild-moderate activities." (R. 690.)

With respect to Plaintiff's back impairments, (1) the ALJ afforded some weight to spine specialist Dr. Sebastian Lattuga's assessment that Plaintiff should refrain from any activity that exacerbates his symptoms (R. 25, 255-56) and (2) the ALJ afforded some weight to the opinion of consultative examiner Dr. Caiati (R. 25), who submitted an orthopedic medical source statement (R. 401-04). Dr. Caiati opined that (1) Plaintiff was unrestricted in "sitting, standing, walking, reaching, pushing, and pulling" from a "musculosketal point of view," (2) Plaintiff had minimal to mild limitations to bend due to low back pain, (3) Plaintiff had minimal limitations to climb due to bilateral

7

knee pain, and (4) Plaintiff had mild limitations to lift due to low back and bilateral knee pain. (R. 404.)

As for Plaintiff's pulmonary impairments, Dr. Mongia, a consultative examiner who conducted pulmonary testing, opined, among other things, that Plaintiff "was restricted from activities requiring mild or greater exertion because of chronic pneumonia, emphysema, and chronic bronchitis. He has mild to moderate restriction for standing and walking, and moderate restriction for squatting and kneeling because of knee problems." (R. 410.) Dr. Mongia also indicated that Plaintiff's pulmonary function tests revealed "mild to moderate restrictive pattern" and "moderate obstruction" (R. 409) and that Plaintiff's "chest exam does not correlate with test result" (R. 411). The ALJ afforded Dr. Mongia's opinion "limited weight" and described it as "overly restrictive and not consistent with the overall record." (R. 25.) Instead, the ALJ found that "[t]he overall record evidence is consistent with a range of work included in the [RFC], per" Dr. Cruz. (R. 25.)

In addition to his treatment notes, Dr. Mermelstein, Plaintiff's treating pulmonologist, submitted a "Pulmonary Medical Source Statement" (R.532-35) and opined that Plaintiff is incapable of even "low stress" jobs (R. 535) and that Plaintiff could rarely lift 10 pounds, could only sit for 30 minutes, up to two hours at a time, before needing to get up, could stand/walk less than two

8

hours, would take several unscheduled breaks during a working day, and will be "off task" fifteen percent of the time in a competitive eight-hour work day (R. 533-34).

The ALJ recognized that Dr. Mermelstein has treated Plaintiff since 2012 but assigned Dr. Mermelstein's pulmonary medical source statement "limited weight" as "inconsistent with Dr. Mermelstein's own reports and the overall record evidence." (R. 26.) In support, the ALJ articulated that "treatment notes reflect that [Plaintiff] was doing reasonably well," that "[s]ome dyspnea was due to weight gain," Plaintiff was "only to continue with monitoring and medications, including inhalers and nebulizer," "[f]ollow up was in six months," and Dr. Mermelstein's "assessment appears to be based on the [Plaintiff]'s self-reports, as the overall record does not corroborate such extreme limitations." (R. 26.) Instead, the ALJ found the record evidence "more consistent with the opinions of Dr. Cruz," the non-examining medical expert, "for a range of medium to light work." (R. 26.)

III. Analysis

Plaintiff first contends that the ALJ violated the treating physician rule by (1) failing to provide good reasons to discount Dr. Mermelstein's opinion that Plaintiff is incapable of even "low stress" jobs; (2) failing to identify the weight afforded to Dr. Mermelstein's opinion; and (3) failing to contact

9

Dr. Mermelstein before according his opinion limited weight.[3] (Pl. Mot. at ECF pp. 9-11.) Plaintiff further argues that the ALJ's decision "lacks the support of substantial evidence" (Pl. Mot. at ECF pp. 11-13) and that the ALJ failed to properly evaluate Plaintiff's subjective complaints (Pl. Mot. at ECF pp. 13-15).

The Commissioner contends that the ALJ's RFC finding is supported by substantial evidence because (1) the ALJ properly afforded more weight to the consulting medical expert (Comm'r Br., D.E. 14, at 20-24), (2) Dr. Mermelstein's physical function opinion contradicted his treatment notes and was inconsistent with medical evidence (Comm'r Br. at 24-27), and (3) the ALJ properly considered Plaintiff's subjective complaints (Comm'r Br. at 28-30.)

A. The Treating Physician Rule[4]

The "treating physician rule" provides that the medical opinions and reports of a claimant's treating physicians are to be

---

[3] The ALJ addressed Plaintiff's claim for disability based on his back impairment and pulmonary impairment. It does not appear that Plaintiff appeals the portion of the ALJ's RFC finding with respect to Plaintiff's back impairment and thus the Court limits its inquiry to the ALJ's RFC finding with respect to Plaintiff's pulmonary-related impairment.

[4] "[T]he Court reviews the ALJ's decision under the earlier regulations because the Plaintiff's application was filed before the new regulations went into effect." Williams v. Colvin, No. 16-CV-2293, 2017 WL 3701480, at *1 (E.D.N.Y. Aug. 25, 2017).

given "special evidentiary weight." Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998). The regulations state:

> Generally, we give more weight to medical opinions from your treating sources . . . . If we find that a treating source's medical opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.

20 C.F.R. § 404.1527(c)(2) (emphasis supplied; second and third alterations in original). Thus, the opinion of a treating physician "need not be given controlling weight where [it is] contradicted by other substantial evidence in the record." Molina v. Colvin, No. 13-CV-4701, 2014 WL 3925303, at *2 (S.D.N.Y. Aug. 7, 2014) (internal quotation marks and citation omitted).

When an ALJ does not afford controlling weight to the opinion of a treating physician, the ALJ must consider several factors: "(1) the length of the treatment relationship and frequency of the examination; (2) the nature and extent of the treatment relationship; (3) the extent to which the opinion is supported by medical and laboratory findings; (4) the physician's consistency with the record as a whole; and (5) whether the physician is a specialist." Schnetzler v. Astrue, 533 F. Supp. 2d 272, 286 (E.D.N.Y. 2008). The ALJ must also set forth "'good reasons' for not crediting the opinion of a [plaintiff's] treating

physician." Id. at 287. An ALJ provides "'good reasons' for discounting a treating physician's opinion that reflect in substance the factors as set forth in [Section] 404.1527(d)(2), even though the ALJ declines to examine the factors with explicit reference to the regulation." Crowell v. Comm'r of Soc. Sec., 705 F. App'x 34, 35 (2d Cir. 2017) ("While the ALJ did not explicitly discuss the treating physician rule, he nonetheless stated that [the physician's] opinion . . . was contradictory to the rest of the record evidence."). "Ultimately, an ALJ must comprehensively set forth her reasons for the weight assigned to a treating physician's opinion." Id. (internal quotation marks and citation omitted).

As a preliminary matter, Plaintiff's argument that the ALJ failed to specify the weight assigned to Dr. Mermelstein's opinion necessarily fails. The ALJ explicitly assigned Dr. Mermelstein "limited weight." (R. 26.) Thus, the ALJ was obligated to consider the above-referenced factors when deciding to assign Dr. Mermelstein's opinion less than controlling weight.

However, the ALJ failed to follow the treating physician rule. The ALJ assigned "little weight" to the opinions of Dr. Mermelstein and Dr. Mongia, the only physicians to treat and opine on Plaintiff's pulmonary impairments[5] and his ability to

---

[5] The remainder of the ALJ's RFC decision either relates to Plaintiff's back impairment and/or "merely summarizes the

12

engage in work-related functions and whose opinions the ALJ described as "extreme" (R. 26) and "overly restrictive" (R. 25), respectively. From a pulmonary perspective, the opinion from Dr. Cruz, the non-examining medical expert, is the least restrictive medical opinion in the record. See Tanya S. v. Saul, No. 18-CV-00326, 2019 WL 4727446, at *7 (N.D.N.Y. Sept. 27, 2019); (R. 690). Yet the ALJ afforded Dr. Cruz's opinion "significant weight and [ ] adopted [it] in the" RFC. (R. 26.) Thus, in "exclusively relying on" and, in fact, adopting Dr. Cruz's medical source statement, the ALJ "clearly erred." Bradley v. Colvin, 110 F. Supp. 3d 429, 444 (E.D.N.Y. 2015) (citing Vargas, 898 F.2d at 295; Fernandez, 2013 WL 1291284, at *16; Roman v. Astrue, No. 10-CV-3085, 2012 WL 4566128, at *16 (E.D.N.Y. Sept. 28, 2012)); Garcia v. Comm'r of Soc. Sec., No. 17-CV-02715, 2019 WL 1385222, at *20 (E.D.N.Y. Mar. 27, 2019) ("The Second Circuit has indicated that, by extension of the treating physician rule, ALJs should not rely heavily on findings by consultative examiners or non-examining doctors.").

Moreover, to the extent the ALJ's finding that Plaintiff was "only to continue with monitoring and medications, including

---

medical evidence and [Plaintiff's] testimony and cites to treatment notes that do not address how [Plaintiff's pulmonary] impairments affect [his physical] ability to perform work-related functions." Stein v. Colvin, No. 15-CV-6753, 2016 WL 7334760, at *4 (W.D.N.Y. Dec. 19, 2016); see R. 20-27.

13

inhalers and nebulizer" and that "[f]ollow up was in six months" can be construed as discounting Dr. Mermelstein's opinion as "conservative," that is "not a 'good reason' to reject a treating physician's medical opinion." (R. 26 (emphasis added)); Destina v. Berryhill, No. 17-CV-2382, 2018 WL 4964103, at *6 (E.D.N.Y. Oct. 15, 2018) (citing Morris v. Colvin, No. 12-CV-5600, 2016 WL 7235710, at *9 (E.D.N.Y. Dec. 14, 2016)). "In this Circuit, the opinion of a treating physician is not 'to be discounted merely because he has recommended a conservative treatment regimen.'" Destina, 2018 WL 4964103, at *6 (quoting Burgess v. Astrue, 537 F.3d 117, 129 (2d Cir. 2008)) (subsequent citation omitted). "Such a reason 'falls far short of the standard for contradictory evidence required to override the weight normally assigned the treating physician's opinion.'" Id. (quoting Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000)).

Thus, the ALJ traversed the treating physician rule and on remand the ALJ should "endeavor to obtain enough information to determine whether the opinion" of Dr. Mermelstein is entitled to controlling weight. Murphy v. Saul, No. 17-CV-1757, 2019 WL 4752343, at *7 (E.D.N.Y. Sept. 30, 2019); Balodis v. Leavitt, 704 F. Supp. 2d 255, 268 (E.D.N.Y. 2010).

B. Substantial Evidence

The Court also finds that Plaintiff's pulmonary-related RFC is not supported by substantial evidence. The Commissioner

14

argues that the "ALJ's detailed RFC finding is supported by substantial evidence, in particular the opinions of medical expert pulmonologist Dr. Cruz and consulting physician Dr. Caiati . . . ." (Comm'r Br. at 21.) "In order for the Court to determine whether a treating physician's opinion is consistent with other substantial evidence in the administrative record, the Court must keep in mind that 'genuine conflicts in the medical evidence are for the ALJ to resolve.'" Winder v. Berryhill, 369 F. Supp. 3d 450, 457 (E.D.N.Y. 2019) (quoting Gunter v. Comm'r of Soc. Sec., 361 F. App'x 197, 199 (2d Cir. 2010)) (subsequent citation omitted). However, "in determining a claimant's RFC, 'even where a nonexamining opinion is afforded weight, it alone cannot be considered substantial evidence'" and "may not be accorded significant weight.'" Ciambra v. Colvin, No. 15-CV-3474, 2017 WL 1323758, at *10, 12 (E.D.N.Y. Mar. 27, 2017) (quoting D'Augustino v. Colvin, No. 15-CV-6083, 2016 WL 5081321, at *2 (W.D.N.Y. Sept. 16, 2016) and Roman v. Astrue, 2012 WL 4566128, at *16 and collecting cases)). Thus, "the evidence that purportedly contradicted [Dr. Mermelstein's] opinion was not substantial evidence"[6] and the limitations identified by Dr. Mermelstein are

---

[6] Dr. Caiati, a consultative physician, submitted an orthopedic examination report and not a pulmonary examination report. (R. 401-04.) As stated above, the Court's inquiry is cabined to the ALJ's RFC finding with respect to Plaintiff's pulmonary-related impairments and thus Dr. Caiati's opinion does not

15

"inconsistent with retaining the ability to perform" light work. See, e.g., Ingrassia v. Colvin, 239 F. Supp. 3d 605, 627 (E.D.N.Y. 2017); Ciambra, 2017 WL 1323758, at *12.

The ALJ also found that Dr. Mermelstein's opinion is "inconsistent with Dr. Mermelstein's own reports," including treatment notes that Plaintiff was doing "reasonably well." (R. 26.) However, Dr. Mermelstein's "records contain only raw medical evidence from each particular visit," such as that Plaintiff was doing "reasonably well," and "do not assess [Plaintiff's] ability to engage in competitive work on a regular and continuing basis despite" his impairments. Stein, 2016 WL 7334760, at *4; see 20 C.F.R. § 416.945(b) (stating that the SSA will evaluate the claimant's ability to work on a "regular and continuing basis" when assessing his or her physical abilities). Thus, it is not entirely clear that Dr. Merlmelstein's treatment notes and medical source statement are inconsistent.

Nonetheless, "even if [Dr. Mermelstein's] treatment notes were inconsistent with his medical opinions, the ALJ inappropriately 'cherry picked' the notes that supported his conclusion while ignoring those that did not." Destina, 2018 WL 4964103, at *6 (citing Shaw, 221 F.3d at 135 (finding that the selective use of a treating physician's opinion "undermines any

---

provide "substantial evidence" contradictory to Dr. Mermelstein's opinion.

16

argument that [the physician's] opinion was so unreliable that it should not have been assigned controlling weight")). Therefore, "[i]f the ALJ believed that there was a discrepancy in the physician's opinions, he should have exercised his discretion to develop the record to resolve any conflict," including evidence that Plaintiff was doing "reasonably well" (R. 498) with Plaintiff's inability to tolerate "even 'low stress' jobs" (R. 535). Destina, 2018 WL 4964103, at *6 (citing Jimenez v. Astrue, No. 12-CV-3477, 2013 WL 4400533, at *11 (S.D.N.Y. Aug. 14, 2013) (parenthetical and subsequent citations omitted)); Pensiero v. Saul, No. 19-CV-0279, 2019 WL 6271265, at *4 (D. Conn. Nov. 25, 2019) ("[W]hen the treatment notes and test results from the claimant's treating physicians do not assess how the claimant's symptoms limit [her] functional capacities, remand is warranted.") (alterations in original) (citation omitted); Corrigan v. Comm'r of Soc. Sec. Admin., No. 18-CV-5686, 2019 WL 5212850, at *5 (E.D.N.Y. Oct. 16, 2019); Delacruz v. Astrue, No. 10-CV-05749, 2011 WL 6425109, at *15 (S.D.N.Y. Dec. 1, 2011), R&R adopted, 2011 WL 6425101 (S.D.N.Y. Dec. 21, 2011); Newson v. Comm'r of Soc. Sec., No. 17-CV-2718, 2019 WL 6173400, at *3 (E.D.N.Y. Nov. 20, 2019 ("It is the ALJ's job to grapple with inconsistencies and develop an incomplete record further."); Murphy, 2019 WL 4752343, at *7.[7]

---

[7] The Commissioner argues that Dr. Mermelstein's opinion is inconsistent with his treatment notes because he "repeatedly

17

With respect to Plaintiff's pulmonary impairments, Dr. Cruz cited unspecified pulmonary function tests to opine that Plaintiff has "sufficient reserve to perform mid-moderate activities." (R. 690.) Even assuming Dr. Cruz's opinion constitutes "substantial evidence," which it does not, this finding is nonetheless "unhelpful because [it was] vague regarding the Plaintiff's limitations." Ingrassia, 239 F. Supp. at 625. The "Second Circuit has explicitly said that a '[doctor]'s use of the terms 'moderate' and 'mild,' without additional information, does not permit the ALJ, a layperson notwithstanding [his] considerable and constant exposure to medical evidence, to make the necessary inference that [the plaintiff] can perform the exertional requirements of [light] work.'" Id. at 625-26 (quoting Curry v. Apfel, 209 F.3d 117, 123 (2d Cir. 2000) superceded by statute on other grounds, 20 C.F.R. § 404.1560(c)(2) and citing Selian v. Astrue, 708 F.3d 409, 421 (2d Cir. 2013)) (alterations in original). Here, Dr. Cruz's assessment that Plaintiff has "sufficient reserve to perform mild-moderate activities" (R. 690)

---

found that Plaintiff was not in respiratory distress and did not exhibit 'increased work of breathing.'" (Comm'r Br. at 25.) The ALJ did not cite to these records as inconsistent and, for the reasons articulated above, the Court does not consider these records as contradictory as the Commissioner argues them to be. Newbury v. Astrue, 321 F. App'x 16, 18 (2d Cir. 2009) ("A reviewing court 'may not accept appellate counsel's post hoc rationalizations for agency action.'" (quoting Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999))).

does not "have any meaning and is not substantial evidence."[8] Ingrassia, 239 F. Supp. at 626.

Moreover, the Court recognizes that Dr. Cruz did not provide a "pulmonary medical source statement" (see, e.g., R. 532-35) but rather a "medical source statement of ability to do work-related activities" (R. 681-92) and opined on Plaintiff's complaints of pulmonary disease, lumbago, and radiculopathy (R. 692). The Court cannot determine whether Dr. Cruz's opinion regarding Plaintiff's ability to sit, stand, and walk were limited to Plaintiff's back impairments or in combination with Plaintiff's pulmonary impairments. (Compare Comm'r Br. at 24 ("No treating doctor opined that Plaintiff was unable to work due to his back impairment, Dr. Cruz, however, evaluated the evidence pertaining specifically to Plaintiff's back [ ] and opined [ ] that he could perform a range of light work") with Comm'r Br. at 22 ("Dr. Cruz noted that Plaintiff's pulmonary function testing, despite some negative findings that a layperson may conclude prevent working, opined that Plaintiff had sufficient reserve to perform mild-moderate activities.").)

Accordingly, "the ALJ's determination of [Plaintiff's] RFC was not supported by substantial evidence, and must be overturned." Bradley, 110 F. Supp. 3d at 445 (citing McKissick v.

---

[8] For the same reasons, Dr. Mongia's opinions are similarly vague. (See R. 410-11.)

Barnhart, No. 01-CV-1550, 2002 WL 31409933, at *16 (E.D.N.Y Sept. 30, 2002) (finding Commissioner's decision not supported by substantial evidence where non-examining medical expert disagreed with treating physicians' limitations opinions)).

In light of these findings, the Court need not address Plaintiff's additional contentions. Plaintiff may address those issues on remand.

## CONCLUSION

Accordingly, Plaintiff's motion (D.E. 9) is GRANTED and the Commissioner's motion (D.E. 13) is DENIED. This matter is REMANDED for proceedings consistent with this Memorandum and Order. The Clerk of the Court is directed to mark this case CLOSED.

SO ORDERED

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: January  7 , 2020
       Central Islip, New York